# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MABEL A., | No. CV 17-07243-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Mabel A. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] The Commissioner's decision is affirmed and this case is dismissed with prejudice.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I.  BACKGROUND

Plaintiff filed applications for DIB and SSI on June 24, 2013, alleging disability beginning September 25, 2010. See Dkt. 16, Administrative Record ("AR") 210-19. After being denied initially and upon reconsideration, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on February 11, 2016. See AR 144-48, 152-60. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"). See AR 50-83.

On March 2, 2016, the ALJ denied Plaintiff's claim. See AR 28-49. The ALJ found that Plaintiff had the severe impairments of disorders of the spine and affective disorder. See AR 36. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: could sit and stand for 6 hours in an 8 hour workday; occasionally lift 20 pounds and frequently lift 10 pounds; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; no climbing ladders, ropes, or scaffolds; no concentrated exposure to unprotected heights or dangerous/fast moving machinery; and limited to simple, routine tasks. See AR 38.

Based on the evidence of record, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, including garment folder, Dictionary of Occupational Titles ("DOT") 789.687-06; hand packager, DOT 559.687-074; and small products assembler, DOT 706.684-022. See AR 44-45. Accordingly, the ALJ determined that Plaintiff was not disabled. See AR 45.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-8. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ erred in rejecting (1) the opinion of Plaintiff's treating psychologist and (2) her subjective symptom testimony. See Dkt. 21, Joint Statement ("JS") at 4.

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in rejecting the opinion of her treating psychologist, Dr. Gurgiana Stevkovski. See JS at 4-12.

### 1. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

## 2. Medical Opinion and ALJ Reasoning

Plaintiff started seeing Dr. Stevkovski in October 2014. See AR 720. Before that, she saw Dr. Yaron Pruginin for individual therapy and Dr. Deborah Steinberg for medication management. See AR 344-454, 720-806. Plaintiff reported a "long history" of depression and anxiety. AR 720. She told Dr. Stevkovski she had "moderate success" with medications, and had "fluctuating" mood states and suicidal ideations. Id. Dr. Stevkovski assessed Plaintiff with "[m]ajor depressive disorder, recurring episode, severe, without mention of psychotic behavior" and "[g]eneralized anxiety disorder." AR 721.

In November 2014, Plaintiff reported an "overall stable mood" to Dr. Stevkovski. AR 715. Plaintiff had just returned from visiting her daughter in Georgia and had a positive experience there. See id. Plaintiff reported looking forward to her upcoming birthday, whereas in the past, she had planned to commit suicide on her birthday. See id. Dr. Stevkovski told Plaintiff this was a "big accomplishment" and that she was "progressing positively." Id.

In December 2014, Plaintiff reported fluctuating depression with periods of more intense depression. See AR 710. Dr. Stevkovski helped Plaintiff to process her feelings and the two worked on reducing negative thinking patterns. See id. In February 2015, Plaintiff reported feeling better but that she continued to have negative thoughts about her self-worth. See AR 699. In March 2015, Plaintiff reported "mild mood improvements," and discussed her excitement about visiting her daughter in Georgia. See AR 694.

In June 2015, Plaintiff reported an improved mood since taking Abilify, an antipsychotic. See AR 684. Plaintiff told Dr. Stevkovski her trip to Georgia was positive but that she continued to dwell on the negative aspects of her life. See id. Plaintiff reported that although she has passive suicidal ideations at times, she does not want to harm herself and had no plan to do so. See id.

In August 2015, Plaintiff reported a stable mood and that she had been trying to stay positive. See AR 675. In November 2015, Plaintiff reported an "overall more positive mood." AR 672. Plaintiff explained that her birthday was coming up, and that while she planned to commit suicide on her birthday in the past, she did not feel that way anymore. See id. Dr. Stevkovski and Plaintiff discussed her progress and the fact that she was learning to better manage her thoughts and emotions. See id. In December 2015, Plaintiff reported an overall more positive mood, and discussed being in a "good place." AR 662.

Dr. Stevkovski completed a Mental Impairment Residual Functional Capacity Questionnaire in January 2016. See AR 842. Dr. Stevkovski diagnosed Plaintiff with: Axis I, major depressive disorder, severe, and generalized anxiety disorder; Axis II, deferred; Axis III, hypertension, GERD, fibromyalgia, and carpal tunnel; Axis IV, housing stressors, medical problems, and financial stressors; and Axis V, GAF score of 55. See id. Dr. Stevkovski described Plaintiff's prognosis as "fair to good," and checked boxes ranging from "limited but satisfactory" to "unable to meet competitive standards" in Plaintiff's ability to do work-related activities. See AR 842-45. Dr. Stevkovski opined that Plaintiff had none-mild restrictions of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, and pace; and three episodes of decompensation within a 12-month period. See AR 846. Dr. Stevkovski also opined that Plaintiff would likely be absent from work more than four days per month on average. See AR 847.

The ALJ gave little weight to Dr. Stevkovski's opinion because it was "not consistent with the medical evidence in the record, which demonstrate the claimant's significant improvement with the change in her medication prescriptions." AR 42. The ALJ also noted that Plaintiff traveled

independently to Georgia to help with her daughter's newborn, tasks that demonstrated high functioning and thus inconsistent with Dr. Stevkovski's restrictions. See id. Finally, the ALJ stated that the record did not support Dr. Stevkovski's statement that Plaintiff had experienced three episodes of decompensation. See id.

### 3. Analysis

Because Dr. Stevorski's opinion was contradicted, the ALJ could reject it for "specific and legitimate reasons" supported by substantial evidence in the record. Carmickle, 533 F.3d at 1164.

The ALJ's primary reason for discrediting Dr. Stevkovski's opinion was because it was "not consistent with the medical evidence in the record, which demonstrate the claimant's significant improvement." AR 42. An ALJ may reject opinions that are "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." Batson v. Comm'r of SSA, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citation omitted).

The ALJ's finding is supported by substantial evidence. The ALJ went through Plaintiff's extensive mental health treatment records and noted that although her symptoms waxed and waned, they generally improved over time. See AR 40-41. For example, the ALJ noted that from August 2013 to December 2015, Plaintiff consistently reported improved moods with less suicidal ideations. See AR 41 (citing AR 405, 474, 481, 483, 664-715, 718, 723, 735, 754). The ALJ also correctly pointed out that since late 2014, Plaintiff experienced overall stability with some episodes of increased depression symptoms. See AR 41 (citing AR 664-715). In fact, in both November 2014 and 2015, Plaintiff told Dr. Stevorski that she was looking forward to her birthday instead of planning a suicide attempt around it, as she did previously. See AR 672, 715. In all, Plaintiff's treatment history generally shows noticeable improvements once prescribed the correct dose of medication. See,

e.g., AR 697, 713, 715. Indeed, by January 2015, Plaintiff reported feeling less overwhelmed, better able to deal with crowds, and more hopeful, with fleeting suicidal ideations. See AR 664.

Plaintiff contends the ALJ ignored the fact that her symptoms came and went. While it is true that "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental health conditions such that an ALJ may not discount attestations of impairment "merely because symptoms wax and wane in the course of treatment," Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014), the ALJ did not err on this basis. The ALJ repeatedly acknowledged that Plaintiff's symptoms came and went, but correctly noted that overall the record reflected that Plaintiff had made steady progress. See AR 41 (noting that Plaintiff's symptoms worsened in July 2013 when she discontinued treatment), id. (noting that Plaintiff's depression and anxiety worsened in October 2013), id. (noting that Plaintiff reported hopelessness and suicidal ideation in September 2014).

Plaintiff's additional argument that the ALJ "cherry-picked" through the treatment records is not supported. As explained above, the ALJ exhaustively went through Plaintiff's treatment records and included where her symptoms returned or got worse. As one example, Plaintiff faults the ALJ for isolating records indicating she was "doing better" while simultaneously ignoring the July 2013 treatment notes that showed suicidal ideations. See JS at 8. To the contrary, the ALJ explicitly referenced those notes and the fact that Plaintiff was "constantly thinking about suicide and death." AR 41 (citing AR 54, 348). The ALJ was not required, as Plaintiff seems to suggest, to go through every mental health treatment record.

The record also supports the ALJ's conclusion that there was no evidentiary support for Dr. Stevkovski's statement that Plaintiff had experienced three episodes of decompensation. Specifically, the ALJ found

that "Dr. Stevkovski's statement that the claimant has experienced three episodes of decompensation within a 12 month period, each of at least two weeks duration, is not supported in the record, as there is no evidence of any such decompensation, psychiatric hospitalization, or psychiatric in-patient treatment." AR 42. The Court agrees that nothing in the record supports Dr. Stevkovski's statement. Plaintiff contends that the definition of "episodes of decompensation" provided to Dr. Stevkovski did not mention two weeks duration. See JS at 12. But the form clearly asked Dr. Stevkovski to state whether Plaintiff had "[t]hree or more episodes of decompensation within 12 months, each at least two weeks long"). AR 846 (emphasis added).

Thus, the ALJ provided two specific and legitimate reasons for rejecting Dr. Stevkovski's opinion. These reasons render harmless any error in the ALJ's finding that Dr. Stevkovski's opinion was inconsistent with Plaintiff's ability to travel from California to Georgia to help her daughter care for her newborn. See AR 42; see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). Plaintiff's infrequent trips to see her family are not necessarily inconsistent with Dr. Stevkovski's opinion that Plaintiff was limited in her activities of daily living and in her ability to travel to an unfamiliar place. See Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017) (concluding that claimant's daily activities did not serve as clear and convincing reason to discount claimant's testimony because they were not transferrable to work environment).

## B. Subjective Symptom Testimony

Plaintiff also contends the ALJ failed to provide clear and convincing reasons to reject her subjective symptom testimony. See JS at 17-21.

### 1. Law

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison, 759 F.3d at 1014 (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 2. Testimony and ALJ Reasoning

Plaintiff testified that she could not work because of back pain. See AR 57-58. She stated she could sit for 15 to 30 minutes, stand for 30 minutes, walk a "couple of blocks," and lift and carry 5 to 15 pounds. Id. She has difficulty with household chores due to the beginning of carpal tunnel syndrome in both hands. See AR 60-61. She can drive, but not at night because she gets scared. See AR 62.

Plaintiff testified that she has psychiatric issues that keep her from working. She has suicidal ideation and thought about killing herself a week before the hearing. See AR 63. Plaintiff's medication has helped, however, and she reports an overall more positive mood and that she is in a good place. See

AR 66. Plaintiff flew to Georgia to help her daughter care for her newborn and stayed there for almost a month. See AR 67-68. She had difficulty on the flight due to leg pain, headaches, and feeling overwhelmed. See AR 68-69. Plaintiff intended to see a cardiologist for recurring chest pain. See AR 70-71.

The ALJ identified several reasons for discounting Plaintiff's testimony. For physical impairments, the ALJ noted that a review of the medical record showed little or no treatment for orthopedic problems, and that Plaintiff's physical therapy was discontinued due to noncompliance. See AR 39. With respect to mental impairments, the ALJ found that Plaintiff's treatment history showed that she was stable when prescribed the right medication and while undergoing therapy. See id. The ALJ also stated that Plaintiff had gaps in treatment, but that once she returned to therapy and took Cymbalta, she experienced significant improvement. See id. Finally, the ALJ found that Plaintiff's allegations of disabling impairments were not consistent with the medical evidence. See id.

### 3.    Analysis

For the reasons discussed below, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony.

First, the ALJ found that following Plaintiff's back surgery, she received "little or no treatment" for orthopedic problems and failed to show up to her physical therapy. AR 39. Both a conservative treatment history and a failure to obtain recommended treatment can be legitimate reasons for an ALJ to discount a claimant's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ's finding is supported by substantial evidence. In April 2013, Plaintiff underwent left L3 hemilaminotomy for L3-4 microdiscretomy. See AR 291-343. Imaging studies in 2014 showed only mild degenerative changes despite Plaintiff's claims of intense pain and extreme limitations in her abilities

to walk, sit, and stand. See AR 535. Similarly, imaging studies of her wrists showed very mild findings, see AR 544, in contrast to her testimony that she could not open jars or button buttons, see AR 61.

In addition, Plaintiff underwent physical therapy from June through July 2013. See 521-34. At the time of her last session, Plaintiff reported that she was able to walk for 4 hours despite pain. See AR 519. Her physical therapy was discontinued, however, due to non-compliance, as she did not return for additional sessions. See id. Although Plaintiff missed one session due to transportation difficulties, see AR 520, nothing in the record indicates this is why she stopped scheduling future visits. "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012).

With respect to Plaintiff's mental impairments, the ALJ found that she had been "quite stable when prescribed the proper medication and while undergoing therapy." AR 39. As explained above, this finding is supported by substantial evidence. While Plaintiff's symptoms waxed and waned, she made steady progress, especially after finding the correct dose of Cymbalta. The ALJ also discredited Plaintiff because she had gaps in her mental health treatment. See id. The Court disagrees. Although Plaintiff did not see a provider from January 2012 to July 2013, she consistently saw a mental health professional thereafter. This error is harmless, however, because the ALJ offered other clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. See Molina, 674 F.3d at 1115-21 (9th Cir. 2012) (applying harmless error principles to social security).

## III.   CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and this case is dismissed with prejudice.

IT IS SO ORDERED.


Date: April 24, 2019

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge